IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALESHIA P. McKEE, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:18-cv-180-SRW |
| ANDREW SAUL, Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Aleshia P. McKee commenced this action on March 19, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying her applications for supplemental security income benefits ("SSI") and disability insurance benefits. *See* Doc. 1; R 10–20. Plaintiff filed an application for disability benefits on May 28, 2015, and for SSI benefits on July 15, 2015, alleging a disability onset date of April 23, 2015, due to degenerative disc disease, cervical spinal stenosis, cervical spondylosis, and lumbar spondylosis. *See* R. 228. On May 26, 2017, Administrative Law Judge Ruth Ramsey ("the ALJ") issued an adverse decision after holding a hearing on the

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

plaintiff's applications.³ *See* R. 10–20. The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* R. 1-5.

In the instant appeal, the plaintiff asks the court to reverse the Commissioner's adverse decision and award benefits or, in the alternative, to remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1 at 2; 12 at 12. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); *see also* Docs. 7, 8. For the reasons stated herein, the court finds that the Commissioner's decision is due to be affirmed.

In addition, the plaintiff moves for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 241(d).⁴ *See* Doc. 12 at 12. This motion is due to be denied.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the

---

³ Attorney Sheila Kay Dansby appeared with the plaintiff at the hearing before the ALJ, and she is plaintiff's counsel of record before this court. *See* R. 37, Doc. 1.

⁴ Plaintiff's brief states "Mr. Crittenden asks this Court to award reasonable attorney's fees pursuant to the Equal Access of Justice Act." Doc. 12 at 12. The court assumes this was a scrivener's error and the request was intended to be made by Ms. McKee.

2

decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from

3

anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ADMINISTRATIVE HEARING

At the hearing before the ALJ on January 9, 2017, plaintiff testified that she is married with two adult children. Her 22-year-old daughter moved back home to help care for her. Plaintiff receives food stamps and Medicaid. Plaintiff's husband drove her to the hearing. She drives only occasionally herself, ten miles at a time at most if she needs to go to the post office. Plaintiff has two years of college and a licensed practical nurse (LPN) degree. She worked as an LPN for eight years. Prior to working as an LPN, she worked as a certified nursing assistant off and on from 1989 until 2007, when she obtained her LPN license. Other prior work included collections for a trash disposal company,[5] and work in a machine plant and a cotton mill. R. 42–45.

Plaintiff testified that she is unable to work due to pain across her lower back that runs into her legs, frequent falling, and numbness and tingling in her hands. She takes multiple medications for pain and anxiety, and to help her sleep. Side effects from her medications include loss of appetite, dry mouth, sleepiness, dizziness, and nausea. She has been undergoing extensive physical therapy, but she testified that it has not helped. She was getting injections that did help, but because she could only get short-term relief from these, her doctor discontinued the injections until really needed. R. 45–47, 51.

Plaintiff smokes five to six cigarettes per day, but is trying to quit. On a typical day, she wakes up, takes her medication, and tries to eat something. Her daughter cooks breakfast for her. Plaintiff spends most of her day lying down. She uses a heating pad or heated blanket. She tries to wash dishes but has to take frequent breaks to sit. She can sweep some, but cannot mop or vacuum. Her daughter does the grocery shopping. Plaintiff

---

[5] She denied being able to do collections work because she cannot sit for long periods of time. R. 52.

does not participate in any activities outside of the home because she falls so much. She falls sometimes once per month and at other times up to twice per week. This has occurred for about eight months. Her doctors attribute her falling to problems with her sacroiliac joints. R. 47–49.

Plaintiff can lift a small laundry basket but it has to be up high. She cannot bend over to pick it up. She does not help care for her grandchildren other than to get them something from the refrigerator. Her daughter watches children in their home, but plaintiff does not tend to them. R. 49.

Plaintiff had surgery on her neck in 2015. It helped with her headaches, but the problems with her hands began occurring after that. She has a history of low back surgery. She still has a lot of pain from that and her "sacroiliacs pop out." R. 51. She has been diagnosed with fibromyalgia. She has days on which she cannot stand to be touched because she hurts so much all over. R. 50–51.

The ALJ took testimony from a VE who identified five past relevant occupations for plaintiff, including licensed practical nurse, nurse's aide, debt collection or skip tracer, weaver, and short-order cook. The VE was asked to assume hypothetically an individual of plaintiff's age, education, and work experience who is capable of sedentary work; who will never climb ropes, ladders, scaffolds; will never balance, crawl, kneel, or crouch; will only occasionally climb stairs or ramps; will not drive a commercial vehicle or operate foot controls; and will avoid concentrated exposure to extreme temperatures and hazardous conditions. Based on the hypothetical, the VE testified that the individual could perform plaintiff's past relevant work as a skip tracer. Additionally, the VE identified jobs in the national economy that the hypothetical individual could do, including food and beverage

order clerk, addressing clerk, and charge account clerk. If the individual were to be absent three or more times per month or be off task 20 percent of the day, there would be no competitive employment available. R. 57–60.

## ALJ's DECISION

In her decision, the ALJ found that the claimant suffered from the severe impairments of degenerative disc disease, cervical spinal stenosis, cervical spondylosis, lumbar spondylosis, and fibromyalgia. *See* R. 13. The ALJ concluded that the claimant did not have an impairment or combination of impairments that met or medically equal a listed impairment. *See* R. 14. The ALJ stated that she considered all of the claimant's impairments individually and collectively in determining the plaintiff's residual functional capacity ("RFC"). *See* R. 16.

The ALJ found that since April 23, 2015, plaintiff had the RFC to perform a limited range of sedentary[6] work as defined in 20 CFR §§ 404.1567(a) and 416.967(a). *Id*. The ALJ found that plaintiff is unable to climb ladders, ropes or scaffolds, and also is unable to balance, crawl, kneel, or crouch. R. 16. Plaintiff is limited to occasional stair and ramp climbing, is unable to drive commercial vehicles or operate foot controls, and should avoid concentrated exposure to temperature extremes, wetness, humidity, and hazardous conditions. *Id.*

---

[6] Under the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

7

At step four, the ALJ found that the plaintiff was capable of performing her past work as a sedentary, unskilled collections worker. *See* R. 18. Based on the VE's testimony, the ALJ made the alternative step five finding that the plaintiff could perform other jobs that are available in the national economy, including representative jobs such as sedentary, unskilled food and beverage order clerk; sedentary, unskilled addressing clerk; and sedentary, unskilled charge account clerk. *See id*. The ALJ's findings resulted in a determination that the plaintiff has not been under a disability since May 28, 2015, through the date of the decision. *Id.*

**ISSUES ON APPEAL**

Plaintiff raises two issues on appeal, both challenging the ALJ's handling of medical opinions. First, she contends that the ALJ failed to afford appropriate weight to the opinion of her treating physician, Melvin Russell, M.D.,[7] and to explain properly the reasons for the weight she assigned that opinion. *See* Doc. 12 at 3–9. Second, she claims that the ALJ erred in failing to give appropriate weight to the opinions of consulting examiner, Alphonzo Vester, M.D., and in failing to explain her reasons therefor. *Id.* at 9–11. The Commissioner urges that the decision should be affirmed because the ALJ properly evaluated the opinions of Dr. Russell and Dr. Vester, and because substantial evidence, which the ALJ articulated, supported the ALJ's findings that the doctors' opinions were due only partial weight. Doc. 13 at 4–12. The court agrees with the Commissioner.

**DISCUSSION**

---

[7] Both parties acknowledge that the ALJ mistakenly attributed the December 2016 opinion to Ross Barnett, M.D., *see* R. 18, instead of Dr. Russell. *See* Docs. 12 at 4, n.1; 13 at 5, n.4. This is not raised as an issue on appeal.

*A. Opinions of treating physician Dr. Russell*

Plaintiff contends that the ALJ failed to attribute appropriate weight to the opinion of her treating physician, Dr. Russell.[8] *See* Doc. 12. The Commissioner responds that Dr. Russell's opinions consisted of a series of checkbox notations containing no reasoning or analysis and can be considered, at best, weak evidence. In addition to the opinions' having no supporting explanation, the Commissioner submits that Dr. Russell's opinions were inconsistent with the medical record, which showed signs of medical improvement. *See* Doc. 13.

On December 14, 2016, Dr. Russell completed a physical capacities evaluation and clinical assessment of pain form. R. 770–72. Dr. Russell indicated his view that plaintiff can lift and carry up to 20 pounds, but no more; she can sit for four hours and walk or stand for four hours in an 8-hour day; she can grasp frequently, push and pull occasionally, but never use foot controls; she can never crouch, kneel, crawl or climb and can only occasionally stoop, balance, and reach. R. 770. She should never be exposed to unprotected heights, moving machinery, or temperature extremes. R. 770. He further said that plaintiff's pain levels were incapacitating and she is unable to function at any level of productive work. R. 771–72.

In discussing the physical capacities evaluation and clinical assessment of pain form completed by Dr. Russell, the ALJ stated as follows:

---

[8] The Commissioner argues, in passing, that it is questionable whether Dr. Russell could be considered a treating physician, as there is only one record of his treating plaintiff in May 2012 (R. 695–97) prior to his completion of the December 2016 assessment. *See* Doc. 13 at 5, n.5. Plaintiff states in her brief that Dr. Russell has treated her since May 2012. Doc. 12 at 4. It appears that Dr. Russell is part of a group at which plaintiff has seen a number of doctors. In any event, both parties have addressed the issue assuming Dr. Russell is a treating physician.

> [N]o more than partial probative weight is assigned to findings reported by Dr. Ross Barnett, the claimant's primary treating physician, in December 2016. While the treating physician opined that the claimant can lift up to twenty pounds, occasionally, he also opined that the claimant's intractable pain renders her unable to participate in work at a productive level. Again, Dr. Barnett's assessment is not consistent with the signs of medical improvement recorded throughout the medical record and acknowledged by the claimant in her own statements regarding her activities of daily living.

R. 18.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at1440) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion was not bolstered by the evidence,
- the evidence supported a contrary finding; or
- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The Commissioner must specify what weight is given to a treating physician's opinion, and any reason for giving it no weight at all. *See MacGregor*, 786 F.2d at 1053 (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985), and *Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir. 1982)). Failure to do so is reversible error. *Id.* (citations omitted).

Plaintiff is correct that an ALJ is obligated to state the weight attributed to a doctor's opinion and the reasons for the weight attributed. This court has explained:

> Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's

> physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a) (2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

*Rudolph v. Berryhill*, 2018 WL 1527827, at *5 (M.D. Ala. 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 WL 2589297, at *7 (M.D. Fla. June 7, 2012), *report and recommendation adopted*, 2012 WL 2589267 (M.D. Fla. 2012), and citing *Winschel*, 631 F.3d at 1179)).

Here, the ALJ gave Dr. Russell's opinion "partial weight." This is not "substantial weight." However, an ALJ is not obligated to accept a treating physician's opinion if the opinion is conclusory, it is not supported by the evidence, the evidence supports a contrary finding, or it is inconsistent with the physician's own records. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004)). Plaintiff complains the ALJ's reliance on plaintiff's sporadic daily activities is an insufficient reason for discrediting Dr. Russell's opinion that she is unable to work. The Eleventh Circuit has recognized that participation in everyday activities such as housework, for a short duration, does not necessarily disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Plaintiff's reported activities were not, however, the only basis for discounting Dr. Russell's opinions. The ALJ also specifically noted the medical

improvement referenced in the records as a basis for attributing less than full weight to Dr. Russell's opinions.

In discussing the medical evidence, the ALJ observed that plaintiff has undergone corrective surgeries for her lower back and cervical spine, and medical improvement from those surgeries has been noted in the medical records. The ALJ states:

> The claimant has undergone fusion surgery to correct the dysfunction of her lower back. Sharply inconsistent with her allegations of chronic pain, the recent treatment record shows that she has presented for treatment in no acute distress and with a normal gait, normal strength in her extremities, and normal deep tendon reflexes. Consistent with those findings, the claimant's treating neurosurgeon recommended that she undergo epidural blockages in her lumbar spine in July 2015 and advised her that she could return to work after the procedure.
>
> The claimant's pain and limitation of motion in her lower back appears to have improved subsequent to corrective surgery. More specifically, the record shows that she presented for post-operative treatment with a normal gait and no difficulties with standing. However, the record shows that she continued to suffer from pain and limited motion in her neck secondary to the degenerative disease process in her cervical spine in June 2015. The claimant underwent corrective surgery on her neck later that month. Shortly after the procedure on her neck, the claimant began a course of physical therapy. Sharply inconsistent with the allegations of the claimant, progress notes recorded by her physical therapist indicate that although she continued to suffer from pain and limitation motion in her neck, left shoulder, and left elbow, she had made "remarkable progress" toward a restoration of motion in September 2015. Sharply inconsistent with the claimant's allegations that she appreciates unacceptable levels of pain relief through compliance with her medications, the claimant told her treating physician that her pain relief was "adequate" in May 2016. Consistent with that statement, the record shows that she exhibited no more than a mildly reduced range of motion in her neck and a moderately reduced range of motion in her back at that time. Moreover, the record shows that a diagnostic imaging study of her spine performed in August 2016 was normal.

R. 17 (citations omitted).

Thus, the ALJ cited reasons in the record for her findings. Nevertheless, the plaintiff argues that the records of her treating pain management specialist support her complaints of pain and reveal that physical therapy was not effective. *See* Doc. 12 at 8–9. While the plaintiff disagrees with the ALJ's factual findings, this court cannot reweigh the evidence and is limited to determining whether there is substantial evidence to support the Commissioner's decision. *See Dyer*, 395 F.3d at 1210. Here, the ALJ stated the weight she attributed to Dr. Russell's opinion and recounted her reasons therefor. Based on the court's careful scrutiny of the record, it concludes that the ALJ's decision and handling of the medical opinions of Dr. Russell are based on substantial evidence and the Commissioner's decision is due to be affirmed on this issue.

*B. Opinions of consultative examiner Dr. Vester*

The opinion of a non-treating doctor, such as a one-time examiner, is not entitled to any special deference or consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). A doctor is not a treating doctor if the claimant's relationship with the doctor is based not on the claimant's medical need for treatment or evaluation, but solely on the claimant's need to obtain a report in support of his or her claim for disability. See 20 C.F.R. §§ 404.1502, 416.902.

Plaintiff saw Alphonza Vester, M.D., for a one-time consultative examination on October 2015. Dr. Vester diagnosed degenerative disease of the spine, cervical and lumbar; fibromyalgia; obesity; essential hypertension; and carpal tunnel syndrome left wrist (possible). He commented, "I think the claimant is severely limited by her lumbar spine disease. I think she is severely limited by fibromyalgia. I think she is moderately limited by her cervical spine disease." He further stated:

> In view of findings on examination, I consider the claimant mildly limited with sitting. I believe she is severely limited with standing, walking, lifting, and carrying objects. I think she is not significantly limited with handling objects. She is not limited with hearing or speaking. I believe her limitation with traveling would be moderate to severe.

R. 693. Plaintiff complains that the ALJ did not specify what part of the doctor's opinion was given weight. (Doc. 12 at 10). However, a review of the ALJ's discussion of Dr. Vester's opinion reflects that the ALJ stated the weight attributed to Dr. Vester's opinion, the reasons she discounted the opinion, and those parts of the opinion the ALJ found consistent or inconsistent with the medical record.

> In discussing Dr. Vester's opinions, the ALJ wrote as follows:
>
> The undersigned is cognizant that Dr. Alphonza Vester performed a consultative physical examination on the claimant in October 2015 and determined that she is severely limited by lumbar spine disease and fibromyalgia. More specifically, the consulting physician concluded that the claimant was (sic) severely limited abilities to stand, walk, lift, and carry objects. No more than partial probative weight is assigned to that finding because it is inconsistent with magnetic resonance imaging studies and examinations by the claimant's treating physicians that clearly demonstrate that her conditions are improving. It is noted that Dr. Vester's evaluation led to a determination that her ability to sit is mildly limited by her conditions, which would not preclude her participation in sedentary work.

R. 18 (citations omitted). Thus, the ALJ adopted Dr. Vester's opinion that plaintiff is only mildly limited in her ability to sit and concluded that such opinion would not preclude sedentary employment. With regard to Dr. Vester's opinion that plaintiff was severely limited in her ability to stand, walk, lift, and carry objects, the ALJ found this inconsistent with the MRI studies and the medical records showing improvement. The plaintiff fails to point to any evidence demonstrating that she is more limited than assessed by the ALJ. The ALJ's decision articulates the basis for her discounting the consultative examiner's opinion

14

and she cites to substantial evidence in the record supporting her decision. Accordingly, the decision is due to be affirmed.

## CONCLUSION

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be **AFFIRMED** by a separate judgment.

In addition, it is hereby

**ORDERED** that the plaintiff's motion for an award of EAJA fees is **DENIED**. *See* Doc. 12.

Done, on this the 23rd day of July, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge